IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERNEST A. THOMAS, | * |
| Plaintiff, | * |
| v. | *   Civil No. TJS-18-0175 |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | * |
| | * |
| Defendant. | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

By the stipulation of the parties, the Court conducted a one-day bench trial on February 7, 2022.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court must make specific findings of fact and state conclusions of law separately in any action tried without a jury. In doing so, the Court must appraise the testimony and demeanor of the witnesses, assess and evaluate the credibility of the witnesses, weigh the evidence, and choose among conflicting inferences and conclusions. In doing so, and to comply with this rule, the Court "'need only make brief, definite, pertinent findings and conclusions upon the contested matters,' as there is no need for 'over-elaboration of detail or particularization of facts.'" *Wooten v. Lightburn*, 579 F. Supp. 2d 769, 772 (W.D. Va. 2008) (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1946 amendment). Rule 52(a) "does not require the court to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient." *Darter v. Greenville Cmty. Hotel Corp.*, 301 F.2d 70, 75 (4th Cir. 1962) (quoting *Carr v. Yokohama Specie Bank, Ltd.*, 200 F.2d 251, 255 (9th Cir. 1952)).

Based on an evaluation of all of the evidence in the record, including the exhibits admitted by the plaintiff and the defendant, the testimony of the witnesses, the inferences to be drawn from the evidence, and the arguments of the parties, I make the following findings of fact and conclusions of law:

**I.      FINDINGS OF FACT**

1. Plaintiff Ernest A. Thomas ("Mr. Thomas") is a Black man originally from Liberia.

2. Mr. Thomas is trained and educated in engineering. Mr. Thomas has worked for Defendant Washington Metropolitan Area Transit Authority ("WMATA") since 2005. He is a member of several professional engineering organizations, including the National Society of Professional Engineers. Mr. Thomas obtained a Bachelor of Science degree in mathematics from the University of Liberia in 1977. He obtained a Master of Science degree in electrical engineering from the Illinois Institute of Technology in 1980. In 1985, he received a postgraduate certificate in power system engineering from General Electric. Before his tenure at WMATA, Mr. Thomas worked in many roles at the Liberia Telecommunications Corporation, including Deputy Managing Director for Technical Services, Planning Engineer, Assistant Planning Manager for System Studies, and Corporate Planning & Development Manager. Mr. Thomas has taught various electrical and electrical engineering courses during his career, including courses at DeVry University and the University of Liberia.

3. At all relevant times, Joseph Robinson ("Mr. Robinson") worked for WMATA as the director of its office of Technical Skills Maintenance Training. Mr. Robinson has worked for WMATA since March 2016.

4. On or about May 19, 2017, Mr. Robinson caused WMATA to post an announcement for the position of "Manager, Operations Training" (the "Position").

5.      WMATA's Exhibit No. 3 is the job description for the Position. The Position is classified as EG-14 on WMATA's salary band. "EG" means "Engineering Grade." The primary responsibility of the Position is "the management and implementation of the maintenance training programs utilizing a 'Best Practice' standardized approach and the preliminary design, development and implementation of maintenance training school creating comprehensive technical and professional development training programs to prepare operational staff in the respective areas to meet WMATA's operating and maintenance needs." Although this Position has a salary classified on WMATA's "Engineering Grade" salary band, the job is not strictly related to engineering. The Position includes responsibilities related to training programs in all parts of WMATA's operations.

6.      The job description states the minimum qualifications for the Position. To be minimally qualified for the Position, an applicant must meet one of the following criteria:

> Graduation from an accredited college or university with a Bachelor's Degree in Engineering, Engineering and Technology, Transportation Management, or related field. A minimum of eight (8) years of experience in maintenance, engineering, or technical management with specific experience that includes training and supervision;
>
> Or, an equivalent combination of post high school education, Industrial or Vocational Training and a minimum of twelve (12) years of experience in maintenance, engineering, or technical management with specific experience that includes training and supervision.

7.      Mr. Thomas applied for the Position and submitted a copy of his resume. WMATA's Exhibit No. 2 is a copy of the resume that Mr. Thomas submitted as part of his application for the Position.

8.      In total, 86 people applied for the Position.

9.      Marcus Washington ("Mr. Washington") was the corporate recruiter assigned from WMATA's Talent Acquisition Team to assist with hiring for the Position. In this role, Mr.

3

Washington reviewed the 86 applications to determine which applicants were "minimally qualified." To determine whether an applicant was minimally qualified, Mr. Washington looked to the criteria outlined in the "Minimum Qualifications" section of the Position's job description. *See supra*.

10. Mr. Washington determined that nine applicants, including Mr. Thomas, were "minimally qualified" for the Position. Mr. Washington forwarded the nine applicants' resumes to Mr. Robinson, the hiring official for the Position.

11. Mr. Robinson reviewed the nine applicants' resumes to determine which applicants would potentially be the best fit for the Position. Mr. Robinson was the sole decisionmaker regarding which of the nine applicants to interview. He based his decision solely on the contents of the nine resumes.

12. There was no requirement that Mr. Robinson give special consideration to internal WMATA candidates, such as Mr. Thomas. Other than receiving Mr. Thomas's resume, along with the other "minimally qualified" candidates, Mr. Robinson had no communication with Mr. Washington about Mr. Thomas's application during the hiring process.

13. Mr. Robinson did not conduct any additional investigation into the candidates before deciding who to interview. Specifically, Mr. Robinson did not investigate any of the candidates, including Mr. Thomas, through WMATA's internal records systems. In fact, Mr. Robinson did not have access to WMATA's internal records systems and was not permitted to search through the records in the systems on his own. Further, Mr. Robinson did not ask any employees of WMATA's human resources department about the candidates.

14. Mr. Robinson selected five applicants to interview from the nine applicants whom Mr. Washington had deemed "minimally qualified." Mr. Thomas was not selected for an interview. Two of the five applicants selected for interviews declined.

15. Mr. Robinson did not select Mr. Thomas for an interview for several reasons. First, Mr. Thomas's resume contained typographical errors (the resume referred to "North Caroline" instead of North Carolina and identified a job different from the Position in the "job objective" section). These errors demonstrated to Mr. Robinson a lack of quality control, which Mr. Robinson believed was an important attribute for a successful candidate for the Position. The wrong job title in the "objective" section of the resume demonstrated to Mr. Robinson that Mr. Thomas's resume was "generic," and that Mr. Thomas may not be a serious candidate because he did not update the resume to reflect his interest in the Position. Second, the resume showed an 11-year gap in employment between Mr. Thomas's most recent job and his previous job, which was a cause of concern for Mr. Robinson. Third, Mr. Thomas's resume listed three different jobs during a 3.5 year period working for WMATA. This was concerning to Mr. Robinson because an ideal candidate was expected to have consistent and increasing levels of responsibility over time. Fourth, Mr. Robinson viewed Mr. Thomas's experience as somewhat limited in scope. Although Mr. Thomas had experience with railcar engineering, communications, and electricity, his experience with other parts of a transit system was lacking. Mr. Robinson also concluded that Mr. Thomas did not have much experience developing and implementing training programs.

16. Mr. Thomas's resume contained another typographical error that Mr. Robinson did not observe. The resume mistakenly states that Mr. Thomas has worked for WMATA since 2013. Mr. Thomas has actually worked for WMATA since 2005.

5

17. Mr. Robinson interviewed three applicants for the Position (Christopher DiFatta ("Mr. DiFatta"), Carlos Mendoza, and Angela Mandel) on June 14, 2017. The interviews were conducted by Mr. Robinson and two of his colleagues in a panel format. The interviewers used ten prepared questions for each applicant. The interviewers assigned scores for each applicants' answers to the questions. The scores were added up and complied into a scoring matrix. The applicant with the highest score was Mr. DiFatta.

18. By memorandum dated June 19, 2017, Mr. Robinson reported to Mr. Washington that Mr. DiFatta obtained the highest score during the interviews. A copy of the memorandum was admitted as Defendant's Exhibit No. 1.

19. In the memorandum, Mr. Robinson requests that Mr. Washington "initiate the hiring process for Christopher DiFatta." Mr. Robinson explains in the memorandum why Mr. DiFatta was selected:

> Based upon the scoring of the interviews, review of work experience and best business case, the following applicant exceed all expectations and are the most qualified for the position:
>
> • Christopher DiFatta
>
> The above candidate is significantly more superior that other candidates interviewed and selected for this position. Mr, DiFatta has vast experience in the transportation industry, including time with Boyd Caton Group, Bombardier Transportation, Alstom and Amtrak. Mr. DiFatta has significant adult training and development experience and is very comfortable and experienced in the learning and development environment inside of a transportation agency. Mr. DiFatta also has prior management experience working and leading large teams of people in various capacities inside an organization.
>
> Mr. DiFattta [sic] has clearly articulated and demonstrated in-depth training, management, and technical skills experience during his interview. He is a seasoned individual and bring a wealth of knowledge, skills and competencies to WMATA. This experience is most essential to the TSMT as we work diligently to build a safer, reliable and compliant organization.

20. As instructed by Mr. Robinson, Mr. Washington offered Mr. DiFatta the Position. Mr. DiFatta accepted the offer and was hired for the Position.

21. Mr. DiFatta worked for WMATA for about one year in the Position. While working in the Position, Mr. DiFatta was recruited for another job with the Washington Metrorail Safety Commission. Mr. DiFatta accepted this job.

22. There is no evidence in the record concerning the race or national origin of Mr. DiFatta. After Mr. DiFatta left the Position, Mr. Robinson divided the work of the Position into two new jobs. Mr. Robinson hired two operations managers, both Black men. The person who occupied the Position before Mr. DiFatta was a Black woman.

23. In a letter addressed to WMATA dated January 15, 2014, Mr. Thomas complained of employment discrimination. This letter qualifies as protected activity under Title VII. This letter is the only evidence of Mr. Thomas's protected activity before the interviews for the position were conducted (on June 14, 2017) and before the hiring decision was made (June 19, 2017).

24. Mr. Robinson was not aware of any prior protected activity by Mr. Thomas, including the January 15, 2014, complaint of employment discrimination.

25. Besides the information contained on Mr. Thomas's resume, Mr. Robinson had no knowledge of Mr. Thomas before this lawsuit was filed.

26. Three witnesses testified: Mr. Thomas, Mr. Robinson, and Mr. Washington. The Court found all witnesses to be credible on the matters that they testified about from personal knowledge. The Court has also reviewed the complete deposition testimony of Ethel Roy ("Ms. Roy"). The Court also credits Ms. Roy's testimony, including her testimony that she does not recall any information specifically related to the hiring process for the Position or to Mr. Thomas's application for the Position.

## II.     CONCLUSIONS OF LAW

1. Mr. Thomas raises the following claims: employment discrimination based on race and national origin, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

2. Title VII prohibits employers from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "The Civil Rights Act of 1991 (1991 Act) amended Title VII to provide that 'an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.'" *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 233 (4th Cir. 2016) (quoting 42 U.S.C. § 2000e–2(m)). A "motivating factor" is a factor that played some part in a defendant's employment practice decision. *See id.*

3. Title VII prohibits employers from retaliating against a person because of that person's protected activity. Opposing discrimination in employment is a protected activity, whether the protest is justified or not. Accordingly, to make out a claim of retaliation, a plaintiff must prove, by a preponderance of the evidence (1) that the plaintiff complained of discrimination in his employment; (2) that the defendant was aware of plaintiff's complaint; (3) that the plaintiff was then subjected to a material adverse action by the defendant, and (4) that the defendant would not have taken the adverse action against the plaintiff but for the defendant's retaliatory animus. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015).

4. Mr. Thomas has not proven that WMATA discriminated against him based on his race or national origin.

5. Mr. Thomas has not proven that WMATA retaliated against him.

6. Mr. Robinson was the sole decisionmaker responsible for deciding which of the nine minimally qualified applicants for the Position to interview.

7. Mr. Robinson did not discriminate against Mr. Thomas because of Mr. Thomas's race or national origin.

8. Mr. Thomas's race and national origin were not motivating factors for Mr. Robinson's decision not to interview Mr. Thomas for the Position and not to hire Mr. Thomas for the Position.

9. Mr. Robinson's stated reasons for not interviewing and not hiring Mr. Thomas for the Position are not pretextual. Mr. Robinson's stated reasons are the true reasons that he, as the sole decisionmaker, chose not to interview and not to hire Mr. Thomas for the position.

10. Mr. Robinson did not offer Mr. Thomas an interview because he believed Mr. Thomas was not a good candidate for the Position. Mr. Robinson based this belief on the typographical errors in Mr. Thomas's resume, a lengthy gap in Mr. Thomas's employment history, and a concern that Mr. Thomas's work experience was not sufficiently relevant to what the Position required. Mr. Robinson also believed that other candidates were better qualified for the Position based on those candidates' resumes.

11. Mr. Robinson's decision not to interview Mr. Thomas for the Position was not motivated by retaliatory animus. Because Mr. Robinson was not aware of Mr. Thomas's prior protected activity, and because Mr. Robinson was the sole decisionmaker responsible for selecting candidates to interview for the Position, it is legally impossible for Mr. Robinson to have retaliated against Mr. Thomas.

12. Mr. Thomas has not shown that any of the other members of the panel that conducted the interviews with Mr. Robinson were aware of his prior protected activity, or that they made the decision to hire Mr. DiFatta because of retaliatory animus.

13. Mr. Robinson's stated reasons for why Mr. DiFatta was hired are not a pretext for retaliation; they are the true reasons that Mr. DiFatta was hired.

14. Because Mr. Thomas has not proven that WMATA unlawfully discriminated against him or unlawfully retaliated against him, WMATA is entitled to judgment on the remaining claims.

## III.  CONCLUSION

For these reasons, the Court finds that Defendant WMATA is entitled to judgment in its favor on Mr. Thomas's claims for employment discrimination and retaliation. As required by Rule 52(a)(1), judgment will be entered separately under Rule 58. Once judgment is entered, the Clerk shall **CLOSE** this case.

The Clerk shall mail a copy of this Memorandum Opinion and the accompanying Judgment to Mr. Thomas.

February 9, 2022  
Date

/s/  
Timothy J. Sullivan  
United States Magistrate Judge